# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **CICAS IP LLC,** | |
| **Plaintiff,** | **Case No. 2:23-cv-294** |
| **v.** | **JURY TRIAL DEMANDED** |
| **Intuitive Surgical, Inc.,** | |
| **Defendants.** | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

CICAS IP LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Intuitive Surgical, Inc. ("Intuitive" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.  CICAS IP LLC is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 30 N Gould St, Suite R, Sheridan, WY 82801.

2.  Upon information and belief, Defendant is a Delaware corporation with a place of business in this District located Plano and Tyler, Texas. Upon information and belief, Defendant employs individuals in this Judicial District involved in the sales and marketing of its products. Defendant may be served with process via its registered agent, C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Upon information and belief, Defendant does business in Texas, directly or through intermediaries, and offers its products and/or services,

including those accused herein of infringement, to customers and potential customers located in Texas, including in the judicial Eastern District of Texas.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of patent-in-suit in this District and elsewhere in the State of Texas.

5.      Upon information and belief, Defendant transacts substantial business in the State of Texas and this Judicial District.  Defendant has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents, including the accused products as alleged herein, as well as providing service and support to its customers in this District.  Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

6.      Defendant maintains regular, physical, continuous, and established places of businesses, including places of business for a Senior Manufacturing Engineer, along with clinical sales managers and associates/representatives, in this District, which Defendant has established, ratified, and controlled; have employed people to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained

further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

7.      As shown below, Defendant has employees in the Eastern District of Texas, including a Senior Manufacturing Engineer, and one in sales in Tyler, Texas for over 5 years:



*See* https://www.linkedin.com/in/todd-clark-a3a59116/ (screenshot of Todd Clark's LinkedIn page, as Senior Manufacturing Engineer, located in Tyler, Texas, of Defendant).



*See* https://www.linkedin.com/in/micah-mobley-a9583a45/ (screenshot of Micah Mobley's LinkedIn page, as Clinical Sales Manager, located in Tyler, Texas of Defendant).





*See* https://www.linkedin.com/in/alexander-blow-a46b3a84/ (screenshot of Alexander Blow's LinkedIn page, as sales representative or associate for over 5 years, located in Tyler, Texas of Defendant).



*See* https://www.linkedin.com/in/jasmine-mayes-lav/ (screenshot of Alexander Blow's LinkedIn page, as a Clinical Territory Associate, located in Tyler, Texas of Defendant).

8.     As shown above, all three of these employees are located in this District in Tyler, Texas. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

9.     Defendant's employees also not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places of businesses, they then visit local customers to deliver or show the samples.

10.     Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                             4

within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

11.    Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees.

12.    Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022)

## BACKGROUND AND PATENTS-IN-SUIT

13.    Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 6,850,794 ("the '794 Patent") titled "Endoscopic Targeting Method and System" relating to image-guided surgery, and in particular, to an endoscopic targeting method and system.

14.    By operation of law, the '794 Patent was originally issued and exclusively vested to the named inventor, Ramin Shahidi, as of the issue date of the '794 Patent.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).  The inventors, in a written instrument dated November 6, 2001, and filed with the United States Patent and Trademark Office on January 23, 2002, assigned all rights, title, and interest in the '794 Patent to Stanford University.

15.     Stanford University, in a written instrument dated October 31, 2007, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the '794 Patent back to Ramin Shahidi.

16.     Ramin Shahidi, in a written instrument dated April 8, 2010, and filed with the United States Patent and Trademark Office on April 13, 2010, then assigned all rights, title, and interest in the '794 Patent to California Institute of Computer Assisted Surgery, Inc.

17.     Thereafter, California Institute of Computer Assisted Surgery, Inc. assigned all rights, title, and interest in the '794 Patent to the Plaintiff. As such, Plaintiff has sole and exclusive standing to assert the '794 Patent and to bring these causes of action.

18.     The '794 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

19.     The inventions described and claimed in the '794 Patent were invented individually and independently by Ramin Shahidi.

20.     The '794 Patent includes numerous claims defining distinct inventions. As represented in Fig. Fig. 1 of the '794 Patent below, the inventions generally relate to image-guided surgery, and in particular, to an endoscopic targeting method and system.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                           6



**Fig. 1**

21.    The priority date of each of the '794 Patent is at least as early as September 23, 2000.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

22.    Before the inventions of the '794 Patent, endoscopic surgical tools were used in a variety of surgical procedures. Typically, such tools included an optical system for visualizing patient structure at or near a target site, and a surgical tool for carrying out desired operations at the site, e.g., removal of tissue for biopsy, surgical removal of necrotic or tumorous tissue, surgical repair of tissue structure, etc. *See* '794 Patent, Col. 1, ll. 1-21.

23.    Therefore, in an endoscope-guided operation, the surgeon would be required to know in which direction, and what distance to advance the tool in order to optimally access the target site. Since an endoscopic tool can only view surface structure, the surgeon would often have difficulty in locating and/or accessing a target site, which is likely to be hidden from endoscopic view. *Id.*, Col. 1, ll. 23-9.

24. The inventor of the '794 Patent conceived new an endoscopic targeting method and system to assist a surgeon in performing an endoscopic surgical procedure or endoscopic examination of a patient. *Id.*, Col. 1, ll. 30-3.

25. To do so, the '794 Patent includes, in one aspect, a system for enhancing the ability of a surgeon to access a target site within a patient. The system includes a data file containing volumetric scan data of a region of the patient that includes the target site, a display device, a movable imagining tool for producing on the display device, an image of visible patient structure seen by the tool, where the position of the tool is tracked relative to the position of the patient, and a computer operatively connected to data file, display screen, and tracking device. *Id.*, Col. 1, ll. 36-45.

26. Then, the computer operates to (i) determine the position and/or orientation of the tool in the frame of reference of the patient, (ii) identify the scan-data coordinates (either x,y or x,y,z coordinates) of the target site, and (iii) project on the video image on the display device, indicia that indicate the lateral position of the target site with respect to the patient structure imaged on the display device. *Id.*, Col. 1, ll. 46-52.

27. The '794 Patent is a pioneering patent and has been cited as relevant prior art in 134 subsequent United States Patent Applications, including Applications Assigned to Defendant and such technology leaders and academia as Intuitive Surgical Operations, Inc., Veran Medical Technologies, Inc., Stryker Corporation, Boston Scientific Scimed, Inc. and Covidien.

28. The claims of the '794 Patent were all properly issued and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value

beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## DEFENDANT'S INFRINGING PRODUCTS

29.     Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides endoscopic targeting methods and systems, including, but not limited to, the Ion Biopsy System ("Accused Instrumentalities"), that utilize the '794 Patent's patented endoscopic targeting methods and systems. On information and belief, these endoscopic targeting systems and methods include (a) a data file containing volumetric scan data, (b) a display, (c) a movable imaging tool, (d) a computer connected to the data file and display, and (e) indicia that indicate the direction and position of target site, as invented in the '794 Patent.

30.     As shown in more detail below, Defendant's products include each and every limitation of at least, but not limited to, claim 1 of the '794 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

31.     Images of Defendant's endoscopic targeting products are shown below. Defendant's endoscopic targeting systems products include the require

    o   a data file containing volumetric scan data;

    o   a display;

    o   a movable imaging tool for producing on the display device, an image of visible structure seen by the tool, where the position and/or orientation of the tool is tracked with respect to the patient coordinate system;

o   a computer connected to the data file and display, for (i) determining the position and/or orientation of the tool in a patient coordinate system, (ii) identifying the scan-data coordinates of the target site in the patient coordinate system, and (iii) projecting on the video image on the display device; and

o   indicia that indicate (a) the direction of the target site, if the target site is outside the patient structure imaged on the display device, and (b) the lateral position of the target site with respect to the patient structure imaged on the display device and the distance between the tool and the target site, if the target site is within the patient structure imaged on the display device.

32.   For example, the Ion Biopsy System is shown below from its website promoting the Accused Instrumentalities and YouTube videos on how it works:





https://www.intuitive.com/en-us/products-and-services/ion

# Respinning what's possible

We're enhancing Ion's biopsy workflow[3] by integrating Ion and Siemens Healthineers' Cios Spin mobile imaging system. With this connection, a 3D scan is performed by Cios Spin and automatically sent to the Ion system. From the Ion console touchscreen, you can now refine navigation and verify tool-in-lesion.[4]

The integration offers guidance when managing differences in nodule locations seen on preprocedure CT images and intraprocedural imaging.

https://www.intuitive.com/en-us/products-and-services/ion



https://www.intuitive.com/en-us/products-and-services/ion

# Innovation to advance lung care

The Ion endoluminal system is Intuitive's robotic-assisted platform for minimally invasive biopsy in the lung. We built Ion on the belief that collecting lung tissue samples for biopsy could be safe and simple, even when nodules are small and located in the peripheral lung. Ion's ultrathin, ultramaneuverable catheter allows clinicians to reach small lesions in all 18 segments of the lung.[1] And its unprecedented stability enables the precision needed for biopsy.[2]

Improving precision[2] and efficiency is at the core of our intent with Ion. Through listening to and learning from our customers, we continuously refine the system—to keep Ion at the forefront of what's possible.

https://www.intuitive.com/en-us/products-and-services/ion



https://www.youtube.com/...=Intuitive

# Navigate to the target

During the bronchoscopy, use Ion's controller to navigate to the target along your pre-planned path. With Ion's ultrathin robotic catheter[3] and advanced maneuverability,[1] you can navigate far into the peripheral lung.[3]

The catheter, which has a 3.5 mm outer diameter and a 2.0 mm working channel, can articulate 180° in any direction and pass around tight turns, allowing it to reach all 18 segments of the lung.[3] In addition, Ion's fiber-optic shape sensor measures the full shape of the catheter, providing real-time precise location and shape information throughout navigation and biopsy.[3]

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    12

With Ion's vision probe, you have real-time vision of the airway while navigating to the target.[3] The camera provides a 120° field of view for navigation and a sharp videoscopic image for anatomy identification.[5]

During navigation, you can synchronize the virtual and the live camera views.[3] And Ion's compass feature translates the direction of the catheter to anatomical directions on the screen in real time.[3] The compass provides you with additional navigation guidance[3] and enables easier catheter articulation.[6]



https://www.intuitive.com/en-us/products-and-services/ion/how-ion-works

With Ion's vision probe, you have real-time vision of the airway while navigating to the target.[3] The camera provides a 120° field of view for navigation and a sharp videoscopic image for anatomy identification.[5]

During navigation, you can synchronize the virtual and the live camera views.[3] And Ion's compass feature translates the direction of the catheter to anatomical directions on the screen in real time.[3] The compass provides you with additional navigation guidance[3] and enables easier catheter articulation.[6]

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    13



https://www.intuitive.com/en-us/products-and-services/ion/how-ion-works



https://www.intuitive.com/en-us/products-and-services/ion/how-ion-works



https://www.youtube.com/....nnel=Intuitive

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          14



https://www.youtube.com/....nnel=Intuitive



https://www.youtube.com/....nnel=Intuitive

## COUNT I
### Infringement of U.S. Patent No. 6,850,794

33.    Plaintiff incorporates the above paragraphs by reference.

34.    Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the

United States its Accused Instrumentalities as shown above.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    15

35.   Defendant thus has infringed and continues to infringe at least claim 1 of the '794 Patent literally and/or under the doctrine of equivalents.

36.   Defendant has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '794 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '794 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '794 Patent.

37.   Defendant individually, collectively, or through others or intermediaries, has contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '794 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '794 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '794 claims.

38.   Defendant has been on actual notice of the '794 Patent at least as early as 2013, when it was cited in its own patent file histories including U.S. Patent No. 8,361,090B2. Defendant's direct and indirect infringement of the '794 Patent has thus been committed with knowledge of the '794 Patent, making Defendant liable for direct, indirect, and willful infringement.



**Screenshot of Google Patent results for Cited By of the '794 Patent showing Defendant's own citation for its U.S. Patent No. 10,667,868, and others.**

39.     Defendant has further has been on actual notice of the '794 Patent at least as early as November 21, 2019, when Ciresi Conlin LLP, on behalf of CICAS, Inc. (the predecessor assignee of the '794 Patent, *see* ¶ 16) sent a notice letter, as shown below, to Defendant. A patent license agreement and an asset purchase agreement were then drafted, but never signed.

November 21, 2019

Alexander Roe
Senior Director New Business Development
Intuitive Surgical
1020 Kifer Road
Sunnyvale, California  94086-5304

Michael V. Ciresi
Founding Partner

E:  MVC@CiresiConlin.com
P:  612-361-8201

Dear Mr. Roe,

We represent CICAS Inc. in its consideration to license or otherwise monetize U.S. Patent No. 6,850,794 (the '794 patent).  As you likely recall, you and others at Intuitive Surgical have had discussions with Dr. Ramin Shahidi and Dr. Ferey Faridian of California Institute of Computer-Assisted Surgery, Inc. (CICAS) previously expressing interest in the '794 patent.

225 South 6th St.
Suite 4600
Minneapolis, MN 55402
612-361-8200

CiresiConlin.com

40.     Defendant's infringement of the '794 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

41.     Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42.     Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1.     Declaring that Defendant has infringed the '794 Patent;

2.     Awarding Plaintiff its damages suffered because of Defendant's infringement of the '794 Patent;

3.     Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4.     An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '794 Patent;

5.     Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the '794 Patent;

6.     Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired '794 Patent; and

7.     Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**